IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07CV8-03-MU

| | |
|---|---|
| MICHAEL R. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| REGGIE WEISNER; KEITH WHITENER; ) | |
| MATT CLARK. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Document No. 33), and brief and affidavits in support of motion (Documents No. 34), Plaintiff's Brief in Opposition, (Document No. 38), Plaintiff's Complaint under 42 U.S.C. § 1983, (Document No. 1 ) and Plaintiff's Amended Complaint (Document No. 26.)

**I. FACTS**

Plaintiff alleged in his Complaint that Defendants, Superintendent Reggie Weisner, Assistant Superintendent Keith Whitener and Unit Manager Matt Clark, have acted with deliberate indifference to him by denying him a warm cell and/or an extra blanket or thermal underwear. Plaintiff also alleged that he was denied a winter coat despite being required to exercise outdoors at least two days per week. As a result of the above deprivations, Plaintiff claims that he suffered from serious physical and mental injuries. On March 22, 2007, Plaintiff filed an Amended Complaint for the above deprivations seeking injunctive relief as well as compensatory and punitive damages against the Defendants.

1

Defendants contend that Alexander Correctional Institution is a new state of the art prison facility that began housing inmates in 2004. According to an affidavit prepared by Terry Petty, an HVAC Supervisor at Alexander Correctional Institution, heating, air conditioning and air handling is controlled by a computer which also monitors and documents air temperatures in all areas of the facility. The temperature setting in the segregation housing area, where Plaintiff was confined, is set at seventy-one (71) degrees Fahrenheit with a 1.5 degree variance. This means that the area will be heated until it reaches 72.5, then the heat will go off until the area cools to 69.5 degrees. When the temperature falls to 69.5 degrees, the system will heat the area until it reaches 72.5 degrees. In November 2006, Mr. Petty provided air temperature readings from the segregation cell where Plaintiff was assigned. Mr. Petty stated that the system computer provided a temperature reading from just over 67 degrees to just under 74 degrees from November 14, through November 28, 2006. Further, Mr. Petty attached a graph showing the average temperatures in the four separate housing areas in the segregation housing unit for the month of December. The graph indicates that the average temperature in the housing areas SE and SF, where Plaintiff was housed, was 70.7 degrees during the month of December. The graph show that the temperature fell below 69 degrees to 68.5 degrees on one occasion during that month. On that occasion, the temperature also reached its highest point of 73.5 degrees, which likely indicates that there was maintenance being performed on the HVAV system. (See Terry Petty Affidavit.) Plaintiff disputes Mr. Petty's affidavit because the temperature readings were taken from the general housing unit and not from Plaintiff's cell specifically.

Defendants' summary judgment materials also show that during the winter months, inmates confined in segregation, as the Plaintiff was, are issued one pair of socks, boxer shorts, a t-shirt, a

lightweight shirt jacket, and one blanket. (See Clark Affidavit.) In addition to these standard items, a heavy coat is made available for use during exercise outside in the yard. (Id. ¶ 7; Wesiner Affidavit ¶ 7.) Plaintiff does not dispute these facts.

Plaintiff's medical records show that although he has made numerous sick call complaints complaining of cold symptoms and/or requesting an extra blanket and thermal underwear, he was advised on December 8, 2006 and again on February 25, 2007 that he did not have a medical condition that warranted him being issued an extra blanket and thermal underwear. (Evans Affidavit ¶ 6.) According to Alexander's Nurse Supervisor Evans, Plaintiff's medical complaints related to cough, congestion, flu-like symptoms, and being cold were not serious and the only necessary treatment was an over the counter cough and/or cold and sinus medication. (Id. ¶ 8.)

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard, by its very terms, provides that the mere existence of some alleged factual dispute between the parties will not defeat a properly supported summary judgment motion; rather the rule requires that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. Moreover, the moving party has the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes will demonstrate the absence of any genuine issue of material fact." Celotex Corp. v. Cateret, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.56(c).

### III. ANALYSIS

The Eighth Amendment states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The "cruel and unusual punishments" standard applies to conditions of confinement. Rhodes v. Chapman, 452 U.S. 337 (1981). However, "the Constitution does not mandate comfortable prisons." Id. at 349. If prison conditions are merely restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. Generally speaking, prison conditions rise tho the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." Id.

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, conditions must rise to the level of a deprivation of a basic human need such as food, warmth or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). Second, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Furthermore, a plaintiff claiming an Eighth Amendment violation based on living conditions must produce evidence of serious or significant physical or emotional injury resulting from the challenged condition in order to withstand summary judgment. Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993); but see 42 U.S.C. § 1997(e) (prisoner cannot maintain a § 1983 action for mental or emotional injury absent physical injury.)

4

Allegations of inmates being subjected to inadequate heating or cooling or ventilation, either alone or in combination with other prison conditions, under certain circumstances may state an Eighth Amendment violations. See Palmer v. Johnson, 193 F.3d 346, 349 (5th Cir. 1999( (affirming the district court's denial of summary judgment on the ground of qualified immunity to Texas prison officials who punished inmates on work detail by confining them outdoors overnight, where the inmates were not allowed to leave the space to use the restroom, were not given insect bite medication, were exposed to fumes from a nearby tractor engine, and endured fifty-nine degree temperatures); Del Raine v. Williford, 32 F.3d 1024, 1035-36 (7th Cir. 1994) (reversing the district court's grant of summary judgment for federal prison officials, where the inmates alleged that the broken windows in the prison provided no relief from the outdoor wind chills of forty to fifty degrees below zero.) "At the same time, the frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when considering the objective component." Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001) (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

Several courts have concluded that a plaintiff's claims of inadequate heating or cooling or ventilation did not rise to the level of a constitutional violation. See Lopez v. Robinson, 914 F.2d 486, 491 (4th Cir. 1990) (concluding the undisputed evidence showed the prison's computerized ventilation and cell temperature system never rose above eighty degrees and that plaintiff's evidence concerning the ventilation system was speculative and fell short of a constitutional violation); Chandler v. Crosby, 379 F.3d 1278, 1297 (11th Cir. 2004) (agreeing with the district court's finding that the temperatures and ventilation in a Florida prison unit were not unconstitutionally excessive); Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (affirming the district court and concluding that

"(while the temperature in extended look-down may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment").

Applying the foregoing principles to the instant case, Plaintiff has failed to establish that his discomfort with the temperature in his cell creates a genuine issue of material fact concerning the objective component of an Eighth Amendment claim in light of Defendant's showing concerning the temperature readings in Plaintiff's cell and the various areas of the segregation housing unit, the standard- issue clothing, blanket and winter coats for outside exercise. Plaintiff argues that there is an genuine issue of material fact because the affidavit from Mr. Petty measured the temperature readings from the housing area only and not from his specific cell. Plaintiff argues that he never saw anyone taking reading from his cell. The Court has reviewed the affidavits and documents in support of Defendants' Motion for Summary Judgment and concludes that there is no genuine issue of material fact with respect to the temperatures in the housing area which included the area where Plaintiff's cell was located within the segregation housing unit. Mr. Petty was clear that he attached graphs of actual temperatures from housing areas SE and SF, where Plaintiff was housed. This comports with where Plaintiff alleges he was housed. (See Brief in Opposition at 16.) Furthermore, Defendant Clark contends that he personally checked the area of Plaintiff's cell, after Mr. Petty obtained air temperature readings, and found the temperature in the area of Plaintiff's cell to be consistent with the temperature readings provided by Mr. Terry. Plaintiff's allegations that his cell is too cold and that other inmates have complained of the temperature also are merely conclusory allegations and are insufficient to withstand summary judgment.

Furthermore, in order for an alleged deprivation to be objectively serious, Plaintiff must

"produce evidence of a serious or significant physical or emotional injury resulting form the challenged condition, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162 (4th Cir. 1995). The question then becomes what injury did Plaintiff sustain due to his confinement in segregation in his cell with allegedly cold temperatures. Plaintiff's medical record establishes that Plaintiff did not suffer any serious injury. While Plaintiff did submit several medical complaints relating to cough, congestion, flu-like symptoms and being cold in his cell (see Ex. A at 1,5,7,10-11, 13-16), the response from the medical staff was to provide over the counter cough and/or cold and sinus medication. (Nurse Evans Affidavit ¶ 8.) In response to Plaintiff's request for an extra blanket and thermal underwear, Plaintiff was told that he did not have a medical condition warranting an extra blanket or thermal underwear. (Ex. B to Nurse Evans Affidavit.). In short, the medical evidence does not support any serious injury resulting from Plaintiff's allegedly cold cell.

While this Court does not dispute that Plaintiff may feel cold in his cell, especially during the colder weather months, "extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1 (1992). Applying the law to the facts of this case, Plaintiff has failed to establish that he was subject to temperatures in his cell that constituted a sufficiently serious deprivation of a basic human need. Moreover, Plaintiff also failed to establish that he sustained a serious physical or emotion injury due to the alleged cold temperatures in his cell. Furthermore, because no constitutional violation has been shown, qualified immunity shields Defendants from Plaintiff's claims for monetary damages. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED that**

1. Defendants' Motion for Summary Judgment (Document No. 33) is GRANTED; and

2. Plaintiff's Complaint (Document NO. 1) and Amended Complaint (Document No. 26) are Dismissed.

**SO ORDERED**.

Signed: July 19, 2007

Graham C. Mullen
United States District Judge